UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| RICARDO COLLINS, | : | |
|     *Plaintiff*, | : | Case No. 3:23-cv-71 (KAD) |
| | : | |
| v. | : | |
| | : | |
| INGRID FEDER, *et al.*, | : | |
|     *Defendants*. | : | December 10, 2024 |

## MEMORANDUM OF DECISION
### RE: DEFENDANTS' [55], [58] MOTIONS FOR SUMMARY JUDGMENT

Kari A. Dooley, United States District Judge

Plaintiff Ricardo Collins, a *pro se* litigant currently incarcerated at MacDougall-Walker Correctional Institution ("MacDougall"), filed this civil rights action pursuant to 42 U.S.C. § 1983, asserting claims for deliberate indifference to serious medical needs against three Defendants: Dr. Ingrid Feder, Dr. Brian Rader, and APRN Chena McPherson. Plaintiff's Second Amended Complaint[1] ("SAC") asserts two claims, both of which are based on the same allegations, namely, that: (1) Defendants failed to inform Plaintiff of certain side effects associated with the pain medication Gabapentin; and (2) upon learning that Plaintiff was experiencing unpleasant side effects, Defendants only increased Plaintiff's dosage of the drug and otherwise failed to treat him. *See generally* SAC, ECF No. 27.

On August 6, 2024, Defendant McPherson filed a Motion for Summary Judgment (hereinafter, the "McPherson MSJ") asserting that Plaintiff failed to exhaust his administrative

---

[1] Upon initial review, United States District Judge Omar A. Williams dismissed all of the claims in Plaintiff's initial Complaint and Amended Complaint, except for Plaintiff's deliberate indifference claim against then-defendant Dr. Lupis. *See* ECF No. 11. In a subsequent Order striking Plaintiff's attempt to file a second amended complaint, the Court informed Plaintiff that if he did not include the claim against Dr. Lupis in his second amended complaint, any such claim would be considered abandoned. *See* ECF No. 21 at 3. Plaintiff thereafter filed the SAC. *See* ECF No. 27. As the SAC does not include any claims against Dr. Lupis despite the Court's instruction, the Court considers all claims against Dr. Lupis to have been abandoned.

remedies as to any claim against her.  *See* McPherson MSJ, ECF No. 55.  Likewise, on August 16, 2024, Defendants Feder and Rader filed a Motion for Summary Judgment (hereinafter, the "Feder & Rader MSJ") which raises the same exhaustion defense.[2]  *See* Feder & Rader MSJ, ECF No. 58.  On September 9, 2024, Plaintiff filed his initial responses to Defendants' motions for summary judgment.  *See* ECF Nos. 61, 62.  On September 10, 2024 and September 23, 2024, Defendants each filed reply briefs.  *See* ECF Nos. 63, 64.  With the Court's permission, *see* ECF No. 67, on October 3, 2024 and October 9, 2024, Plaintiff filed supplemental responses to Defendants' motions for summary judgment.  *See* ECF Nos. 68, 71.  On October 4, 2024 and October 23, 2024, Defendants each filed replies to Plaintiff's supplemental responses.  *See* ECF Nos. 69, 73.

For the reasons set forth herein, Defendants' motions for summary judgment are **GRANTED**.

**Facts**[3]

Plaintiff alleges that on December 28, 2020, prior to undergoing a "tendon transfer," Defendant Feder prescribed Gabapentin for Plaintiff's pain management.  *See* SAC at p. 1.  The SAC further asserts that Defendant Feder did not explain any side effects of the medication to Plaintiff to enable him to make an informed choice to take the medication, and he did not sign any documentation acknowledging that he was at risk of suffering any side effects.  *Id.*  Plaintiff contends that the Gabapentin did not relieve his pain, and in response to his continued complaints

---

[2] On June 3, 2024, the Court granted Defendants' motion to bifurcate the summary judgment phase and brief the threshold exhaustion issue first.  *See* ECF No. 48.  Accordingly, Defendants have not addressed in their motions—and indeed, the Court does not consider herein—the substantive merits of Plaintiff's claims.

[3] Notwithstanding the threshold exhaustion issue, the Court has included the facts alleged in the SAC as relevant background.  The facts relating to Plaintiff's exhaustion of his administrative remedies are taken from the parties' Local Rule 56(a) Statements and supporting exhibits.  Although many of these facts—and the exhibits which support them—are included in each of the Defendants' separate Local Rule 56(a) Statements, for ease of reference the Court cites only to the Feder & Rader Rule 56 Statement for those overlapping statements and exhibits.

of pain, Plaintiff's dosage was only increased. *Id.* While taking Gabapentin, Plaintiff suffered memory loss and heightened anxiety, conditions that he had never experienced before taking Gabapentin. *Id.* at pp. 1–2. The side-effects and pain worsened when Plaintiff was taken off Gabapentin. *Id.* at p. 2. Plaintiff claims that while he was taking Gabapentin, he informed each Defendant at different times that the drug was ineffective, that he continued to be in pain, and that he was experiencing vision problems, memory loss, and heightened anxiety. *Id.* Nevertheless, Plaintiff alleges that none of the Defendants took any action in response to these complaints. *Id.*

<u>Exhaustion of Administrative Remedies</u>

Plaintiff has been continuously incarcerated within the Connecticut Department of Correction ("DOC") from January 2003 through the present. *See* Defendants Feder & Rader's Local Rule 56(a)1 Statement ("Feder & Rader Rule 56 Statement"), ECF No. 59, at ¶ 2; Plaintiff Rule 56(a)2 Statement ("Pl. Rule 56 Statement"), ECF No. 71, at ¶ 2. Plaintiff was incarcerated at Corrigan Correctional Center ("Corrigan") from December 1, 2017 through September 3, 2021, with the exception of three days in March 2018, when he was taken to UConn Hospital. Feder & Rader Rule 56 Statement at ¶ 3. Plaintiff was transferred to MacDougall on September 3, 2021, and is still at that facility. *Id*. at ¶¶ 4–5.

As relevant here, Defendants Feder, Rader, and McPherson worked only at Corrigan, and all of Plaintiff's encounters with Defendants occurred at Corrigan. *Id*. at ¶¶ 6–7.

Plaintiff submitted two Health Services Reviews or Health Services Administrative Remedies (each referred to as "HSRs") relating to the claims in this action, both of which were filed while he was incarcerated at MacDougall in June 2022 and July 2022, respectively. *Id*. at ¶¶ 9–11. Plaintiff did not file any HSR while confined at Corrigan. *Id*. at ¶ 10.

In his first HSR, filed on June 15, 2022, Plaintiff stated the problem as follows:

> I wrote Dr. Lupis on 6/7/22 about medication I had been getting. I explain to the Dr. Lupis that I had a surgery on my left foot and the UConn Doctor prescribe narontine for me. Dr. Lupis gave me Gabapentin instead of the narontie that was prescribe to be by the UConn Doctor because of this I've been experiencing short term memory loss, confusion forgetting the names of everyday objects and trouble sleeping. I also have anxiety issue. I would like to see a neurologist and find out why I'm having these memory losses. And I would like to get the narontie that prescribe to me by the UConn Doctors Please thank you (sic).

*See* Feder & Rader MSJ, Ex. H, at p. 2.

On July 12, 2022, the first HSR was rejected because Plaintiff did not fully complete the form. *Id.* at p. 3.  In his second HSR, filed on July 16, 2022, Plaintiff stated his claim as follows:

> I wrote Dr. Lupis on 6/7/22 about medication I had been getting. I explain to the Dr. Lupis that I had a surgery on my left foot and the UConn Doctor prescribe oxycodone, and Tylenol for me. Dr. Lupis gave me gabapentin instead of Oxycodone and Tylenol that was prescribe to me by the UConn Doctor. Because of that medication Dr. Lupis order for me I've been experiencing short term memory loss, confusion forgetting the names of everyday objects and trouble sleeping. I also have anxiety issue. I would like to see a neurologist and find out why I'm having these memory losses (sic).

Feder & Rader MSJ, Ex. I, at p. 2.

On July 16, 2022, Plaintiff's second HSR was denied by Dr. Lupis, who noted that he had never seen Plaintiff and could not prescribe medication without first seeing the inmate. *Id.* at p. 3. Each of the HSR remedy decisions indicates that "[t]his decision is not subject to further appeal." *Id.* at 3; Feder & Rader MSJ, Ex. H, at p. 3.

**Standard of Review**

A motion for summary judgment may be granted only where there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *see also Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 113–14 (2d

4

Cir. 2017). "A genuine issue of material fact exists if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Nick's Garage*, 875 F.3d at 113–14 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Which facts are material is determined by the substantive law. *Anderson*, 477 U.S. at 248. "The same standard applies whether summary judgment is granted on the merits or on an affirmative defense . . ." *Giordano v. Mkt. Am., Inc.*, 599 F.3d 87, 93 (2d Cir. 2010). In considering a motion for summary judgment, a court "must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Kee v. City of New York*, 12 F.4th 150, 158 (2d Cir. 2021) (citation and internal quotation marks omitted).

The moving party bears the initial burden of informing the court of the basis for its motion and identifying the admissible evidence it believes demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party meets this burden, the nonmoving party must set forth "specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011). He cannot "rely on conclusory allegations or unsubstantiated speculation[.]" *Robinson v. Concentra Health Servs.*, 781 F.3d 42, 44 (2d Cir. 2015) (quotation marks and citation omitted). To defeat a motion for summary judgment, the nonmoving party must present such evidence as would allow a jury to find in his favor. *Graham v. Long Island R.R.*, 230 F.3d 34, 38 (2d Cir. 2000).

Although the court is required to read a self-represented "party's papers liberally and interpret them to raise the strongest arguments that they suggest," *Willey v. Kirkpatrick*, 801 F.3d 51, 62 (2d Cir. 2015), "unsupported allegations do not create a material issue of fact" and do not

5

overcome a properly supported motion for summary judgment. *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000).

**Discussion**

Plaintiff asserts two claims in the SAC. First, Plaintiff contends that Dr. Feder and APRN McPherson did not inform him of the possible side-effects of Gabapentin and later increased his dosage. *See* ECF No. 27 at p. 2. Second, he argues that Dr. Feder did not consult with him and obtain his consent before prescribing Gabapentin, and did not advise him of any side effects when she prescribed the drug. *Id.* at pp. 2–3. Defendants primarily contend that Plaintiff's HSRs only pertain to medical decisions made by Dr. Lupis, and are therefore insufficient to properly exhaust his claims against Defendants. Conversely, Plaintiff argues that: (a) he did exhaust his administrative remedies, insofar as Dr. Lupis's response to Plaintiff's HSR indicates that "this decision is not subject to further appeal"; and (b) alternatively, the administrative remedy process was "unavailable" to Plaintiff as a "disabled person with severe neurological issues and memory loss." *See* Plaintiff's Supplemental Opposition ("Pl. Supp. Opp."), ECF No. 71, at pp. 10–11. As set forth below, the Court agrees with Defendants.

The PLRA

The Prison Litigation Reform Act ("PLRA") requires a prisoner pursuing a federal lawsuit to exhaust all available administrative remedies before a court may hear his case. *See* 42 U.S.C. § 1997e(a) (providing in pertinent part that "[n]o action shall be brought with respect to prison conditions under section 1983 . . . or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted"). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life,

whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

Critically, the PLRA requires "proper exhaustion," *i.e.*, the inmate must use all steps required by the administrative review process applicable to the institution in which he is confined, and do so properly. *Jones v. Bock*, 549 U.S. 199, 218 (2007) (citing *Woodford v. Ngo*, 548 U.S. 81, 88 (2006)); *see also Amador v. Andrews*, 655 F.3d 89, 96 (2d Cir. 2011) (exhaustion necessitates "using all steps that the [government] agency holds out and doing so properly"). "Exhaustion is mandatory—unexhausted claims may not be pursued in federal court." *Amador*, 655 F.3d at 96; *see also Jones*, 549 U.S. at 211. Moreover, prisoners "cannot satisfy the PLRA's exhaustion requirement solely by . . . making informal complaints" to prison officials. *Macias v. Zenk*, 495 F.3d 37, 44 (2d Cir. 2007); *see also Day v. Chaplin*, 354 F. App'x 472, 474 (2d Cir. 2009) (summary order) (affirming grant of summary judgment for failure to exhaust administrative remedies and stating that informal letters sent to prison officials "do not conform to the proper administrative remedy procedures"); *Timmons v. Schriro*, No. 14-CV-6606 (RJS), 2015 WL 3901637, at *3 (S.D.N.Y. June 23, 2015) ("the law is well-settled that informal means of communicating and pursuing a grievance, even with senior prison officials, are not sufficient under the PLRA.").

The requirement for proper exhaustion is not met when a grievance is not filed in accordance with the deadlines established by the administrative remedy policy. *Jones*, 549 U.S. at 217–18 (citing *Woodford*, 548 U.S. at 93–95). In addition, exhaustion of administrative remedies must be completed before the inmate files suit. *Baez v. Kahanowicz*, 278 F. App'x 27, 29 (2d Cir. 2008). Completing the exhaustion process after the complaint is filed does not satisfy

the exhaustion requirement. *Neal v. Goord*, 267 F.3d 116, 122–23 (2d Cir. 2001); *see also Girard v. Chuttey*, 826 F. App'x 41, 44–45 (2d Cir. 2020) (inmate failed to exhaust administrative remedies because he commenced action in district court before appeal was decided or response period elapsed).

Ad hoc or purported special circumstances will not relieve an inmate of his obligation to comply with the exhaustion requirement. Indeed, an inmate's failure to exhaust administrative remedies is only excusable if the remedies are in fact unavailable. *See Ross v. Blake*, 578 U.S. 632, 635 (2016). "[A]vailability" in this context means that "an inmate is required to exhaust those, but only those, grievance procedures that are capable of use to obtain some relief for the action complained of." *Id.* (quotation marks and internal citations omitted). In *Ross*, the Supreme Court identified three circumstances in which a court may find that internal administrative remedies are not available to prisoners under the PLRA. *Id.* at 643–44. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* at 643. "Next, an administrative remedy scheme might be so opaque that it becomes, practically speaking, incapable of use." *Id.* Finally, an administrative remedy is not "available" when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 643. "[T]he three circumstances discussed in *Ross* do not appear to be exhaustive[.]" *Williams v. Priatno*, 829 F.3d 118, 123 n.2 (2d Cir. 2016). In considering the issue of availability, however, the court is guided by these illustrations. *See Mena v. City of New York*, No. 13-CV-2430 (RJS), 2016 WL 3948100, at *4 (S.D.N.Y. July 19, 2016).

DOC Directive 8.9

As relevant here, exhaustion of claims regarding medical needs is governed by DOC Administrative Directive 8.9. *See* Feder's & Rader's MSJ, Ex. E (current version of Directive 8.9, effective April 30, 2021); *see also id.* at Ex. F (previous version of Directive 8.9). Under the current version of Directive 8.9, which was in effect at the time Plaintiff filed his HSRs, there are two types of health services administrative remedies: a diagnosis and treatment remedy, and an administrative issue remedy.[4]

A diagnosis and treatment remedy seeks "review of diagnosis or treatment decision made by a physician, psychiatrist, advanced practice registered nurse (APRN), physician assistant (PA), physician assistant-certified (PA-C), or dentist . . ." Dir. 8.9(6)(a)(i). In seeking this remedy, the inmate "shall concisely explain the specific diagnosis or treatment decision and specify the date of diagnosis or treatment. The inmate shall explain how he or she is dissatisfied with the diagnosis and treatment, how he or she has been affected, and concisely state the resolution desired." Dir. 8.9(6)(c)(i)(1). Upon receipt of a diagnosis and treatment remedy, the health services administrative remedy coordinator ("HSARC") consults the provider who made the decision to determine what action, if any, should be taken. *See* Dir. 8.9(6)(c)(i)(2)(a). If the provider decides that the existing diagnosis or treatment is appropriate, the remedy is denied and may not be appealed. *See id.* If the provider decides that further evaluation is needed, he may schedule a health services review appointment. *See* Dir. 8.9(6)(c)(i)(2)(b).

---

[4] Notably, the current version of Directive 8.9 now provides that the Level 1 HSR "must be filed within 30 calendar days of the occurrence or discovery of the cause of or reason for the [HSR]." Dir. 8.9(6)(b)(iii)(4). However, Defendants do not expressly argue that Plaintiff's HSRs were untimely, and in any event, the record evidence does not conclusively determine when Plaintiff became aware of the possible harmful side effects of Gabapentin, for the purposes of Directive 8.9's 30-day limitations period.

An administrative issue remedy seeks "review of a practice, procedure, administrative provision or policy, or an allegation of improper conduct by a health services provider." Dir. 8.9(6)(a)(ii). Upon receipt, a health services administrative remedy is reviewed for compliance with the provisions set forth in Directive 8.9. If the request is not in compliance, it is rejected. *See* Dir. 8.9(6)(b)(i). The inmate is afforded five calendar days to correct the procedural deficiency and refile the remedy. *See* Dir. 8.9(6)(c)(ii)(2)(a)(i)(1).

<u>Plaintiff's Failure to Exhaust</u>

Here, Plaintiff filed—at most—two HSRs. Plaintiff's first HSR was rejected as incomplete because it did not indicate which type of remedy he was filing. *See* Feder & Rader MSJ, Ex. H, at p. 2. Plaintiff's second HSR was specifically identified as a diagnosis and treatment remedy, and was later rejected on other grounds. *See id.*, Ex. I, at p. 2. Both of Plaintiff's HSRs allege that Dr. Lupis changed the medication initially prescribed to Plaintiff by medical staff at UConn. Neither HSR mentions any prescription entered prior to Plaintiff's foot surgery, or any ensuing increase in his Gabapentin dosage.[5] And although Plaintiff's HSRs reference side effects including memory loss and anxiety, Plaintiff only seeks referral to a neurologist for related evaluation of those side effects. Plaintiff does not complain that any medical provider failed to advise him of those potential side effects, and even if he had, the HSRs otherwise entirely fail to implicate any of the remaining Defendants in this case.[6] In fact, the HSRs were both filed while Plaintiff was

---

[5] In his deposition, Plaintiff conceded that these are the only two HSRs he filed relating to the claims in this case. *See* Feder & Rader MSJ, Pl. Dep. Tr., Ex. D. at pp. 24–25. Indeed, he stated that he was not asserting claims regarding the efficacy of his pain medication, *see id.* at pp. 151, 153, or complaining that any Defendant prescribed any medications. *Id.* at p. 134. Plaintiff also conceded that administrative remedies were available to him, and that he was not prevented or thwarted from utilizing those remedies. *Id.* at p. 130–32. Plaintiff stated that he included in the HSR everything he believed he needed to file. *Id.* at p. 131.

[6] The Court further observes that any such alleged failure would be more properly addressed in an administrative issue HSR for improper conduct by a medical provider, not a diagnosis and treatment HSR.

incarcerated at MacDougall, where none of the Defendants have ever been employed.

Plaintiff broadly asserts that he exhausted his administrative remedies because Dr. Lupis's response to the second HSR indicates that "this decision is not subject to further appeal." Plaintiff is correct, but only as to the claims actually asserted in the HSR, which, at best, identify an objectionable treatment decision made solely by Dr. Lupis, who is no longer a party to this case. While Directive 8.9 does not specifically require Plaintiff to include the names of each Defendant in his grievance, he is still required to specify the allegedly objectionable treatment decisions. *See* Dir. 8.9(6)(c)(i)(1). As discussed above, Plaintiff's HSRs complained only that medication initially prescribed by a doctor at UConn was changed by Dr. Lupis and was causing Plaintiff side effects. In terms of relief, Plaintiff sought to be evaluated by a neurologist. But that is not a claim remaining in this action. Rather, the remaining claims here concern Defendants' alleged failure to advise Plaintiff of the side-effects of Gabapentin before prescribing it and/or while he was taking the drug. Plaintiff's failure to submit an HSR pertaining to the specific allegations set forth in the SAC demonstrates that he did not exhaust his administrative remedies as to his claims against Defendants.

In his supplemental oppositions to the motions for summary judgment, Plaintiff now claims that he is a disabled person and that he requested aid in "reading, researching, writing, and filing" his HSR, but was ignored. Pl. Supp. Opp., ECF No. 71 at p. 2. Specifically, he states that he submitted a request for assistance on July 14, 2022 but received no response. Pl. Supp. Opp., Pl. Decl., ECF No. 71-2 at ¶ 15. In any event, this argument is unpersuasive.

It is well-established that Plaintiff may not submit a declaration contradicting his prior sworn deposition testimony. *See Daly v. Westchester Cnty. Bd. of Legislators*, No. 23-1220-CV,

2024 WL 3264125, at *3 (2d Cir. July 2, 2024) (summary order) (noting that new allegations in plaintiff's affidavit "which are not supported by any other evidence of record, and which contradict his deposition testimony, do not create a genuine issue of material fact precluding summary judgment") (citing *Hayes v. New York City Dep't of Corr.*, 84 F.3d 614, 619 (2d Cir. 1996)); *Federal Deposit Ins. Corp. v. Murex LLC*, 500 F. Supp. 3d 76, 94 (S.D.N.Y. 2020) ("Under the sham affidavit doctrine, 'a party may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition testimony.'") (quoting *Crawford v. Franklin Credit Management Corp.*, 758 F.3d 473, 482 (2d Cir. 2014)).  "[C]ourts in the Second Circuit are particularly reluctant to credit affidavit testimony that alleges critical, obviously material facts that were not mentioned at deposition, noting that such circumstances strongly suggest a sham affidavit." *Murex*, 500 F. Supp. 3d at 94 (citation and internal quotation marks omitted).  In addition, "a party cannot create a triable issue of fact, and thus avoid summary judgment, by renouncing deposition testimony to the effect that he could not remember a particular fact which he now purports to remember." *Id.* (citing *Raskin v. Wyatt Co.*, 125 F.3d 55, 63 (2d Cir. 1997)).  "If a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact." *Perma Research & Development Co. v. Singer Co.*, 410 F.2d 572, 578 (2d Cir. 1969).

      Plaintiff's deposition was conducted on May 23, 2024, during which Plaintiff explicitly agreed that administrative remedies were available to him.  Feder & Rader MSJ, Plaintiff's Deposition Transcript ("Pl. Dep. Tr."), Ex. D at p. 132.  Moreover, Plaintiff said nothing about

being confused and unable to complete the HSR forms. In fact, he did complete the HSR forms. Plaintiff states in his declaration that he was confused and disoriented during the deposition, and answered questions without understanding them. Pl. Supp. Opp., Pl. Decl., ECF No. 71-2 at ¶ 32. However, at the outset of the deposition, Plaintiff was specifically instructed to tell counsel if he did not understand a question so counsel could clarify it and he agreed, under oath, to do so. *See* Feder & Rader MSJ, Pl. Dep. Tr., Ex. D. at p. 10. He also agreed to tell counsel if he felt confused. *Id.* at pp. 10–11. Yet, at no time during the deposition did Plaintiff tell counsel that he was confused and disoriented. Rather, on several occasions, Plaintiff stated that he did not understand a question and counsel clarified the question so he could answer. *Id.* at pp. 13, 34–35, 38, 45–46, 74–75, 87, 221–22, 262–63. Notwithstanding Plaintiff's status as a *pro se* litigant, he cannot now recast the circumstances of his deposition to defeat Defendants' motions for summary judgment. *See Murex*, 500 F. Supp. 3d at 94.

In sum, the undisputed facts demonstrate that Plaintiff failed to exhaust his administrative remedies as to the claims that he now asserts against Defendants. Plaintiff's arguments to the contrary are unsupported by the record evidence, as well as Plaintiff's own sworn testimony. Accordingly, Defendants' motions for summary judgment are GRANTED.

<u>State Law Claims</u>

Count Two of the SAC asserts a claim for "medical negligence and liability" as to Defendant Feder. *See* SAC at pp. 2–3. Defendants Feder and Rader argue—at great length—that Count Two should not be construed as a state law claim, and that even if it were, it is still subject to the PLRA's exhaustion requirement and therefore must be dismissed. *See* Feder & Rader MSJ at pp. 23–32. In response, Plaintiff confirms that he is asserting a state law claim for "negligence

and medical malpractice," and reiterates his argument that he has otherwise exhausted his administrative remedies. *See* Pl. Supp. Opp., Memorandum of Law, ECF No. 71-1 at p. 15. The Court need not determine whether Plaintiff's purported state law claim is subject to the exhaustion requirement.[7] Indeed, insofar as all of Plaintiff's federal claims have been dismissed, the Court declines to exercise supplemental jurisdiction over Plaintiff's purported remaining state law claim. *See Fisk v. Letterman*, 501 F. Supp. 2d 505, 528 (S.D.N.Y. 2007) ("When all federal claims are dismissed, district courts should generally decline to exercise supplemental jurisdiction over pendent state law claims.").

**Conclusion**

For all of the foregoing reasons, Defendant McPherson's Motion for Summary Judgment (ECF No. 55) and Defendants Feder and Rader's Motion for Summary Judgment (ECF No. 58) are **GRANTED**. Plaintiff's claims against all Defendants brought pursuant to 42 U.S.C. § 1983 are **DISMISSED with prejudice**. The Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claim for medical negligence as to Defendant Feder, which is **DISMISSED without prejudice**. The Clerk of Court is directed to enter judgment dismissing the SAC, and to close this case. *See Matteo v. Cnty. of Nassau*, No. 15-CV-6880 (JMW), 2023 WL 5310587, at *19 (E.D.N.Y. Aug. 1, 2023), *report and recommendation adopted*, No. 15-CV-6880 (JMA), 2023 WL 5310874 (E.D.N.Y. Aug. 17, 2023) (granting summary judgment on, *inter alia*, exhaustion grounds, and dismissing plaintiff's federal claims with prejudice, but declining to exercise supplemental jurisdiction over his state law claims and dismissing those without prejudice).

---

[7] If, as Defendants contend, Plaintiff's state law claim is subject to the exhaustion requirement, the Court concludes that for the reasons set forth *supra*, Plaintiff did not exhaust his administrative remedies prior to bringing this lawsuit.

**SO ORDERED** this 10th day of December 2024 at Bridgeport, Connecticut.

*/s/ Kari A. Dooley*
KARI A. DOOLEY
UNITED STATES DISTRICT JUDGE
